SOUTH MILWAUKEE COMPANY, Respondent, vs. MURPHY and others, imp., Appellants.

*December 19, 1901 — January 7, 1902.*

*Estates of decedents: Contingent claims: Limitations: Action against legatees: Law or equity? Corporations: Stock subscriptions: Extinguishment of liability: Successors in interest: Notice of calls: By-laws: Conditions precedent: Pleading.*

1. A claim against the estate of a deceased person, not allowable in the administration proceedings because it is contingent in character, is not affected by any statute of limitations while such character exists.

2. If a claim against the estate of a deceased person remains contingent till after the time limited for filing claims in the administration proceedings, but subsequently becomes absolute, and assets shall have been paid to legatees or next of kin of the deceased, an action will lie, under sec. 3269, Stats. 1898, in favor of the claimant against such legatees, and under the circumstances specified in ch. 141, Stats. 1898, against the next of kin of the deceased, to recover the value of such assets or sufficient thereof to satisfy such claim.

3. An action under sec. 3269 is for the recovery of money only. Issues of fact joined therein are triable by a jury as a matter of right, hence the action is one at law.

4. Sec. 3269 creates a liability different from any existing at common law. It acts, upon the conditions therein mentioned, creating a legal liability resting upon an implied promise by the legatees and next of kin to pay the claims therein provided for, to the extent therein mentioned.

5. If a liability exists, rightly called a debt, not absolute, and there is no way by which it can be determined whether it will ever assume that character, it is contingent and not affected by the statutes of nonclaim regarding the filing of claims against the estates of deceased persons.

6. A debt, so long as it is wholly unknown whether there will ever be an absolute liability to discharge it, is a mere contingent claim. A subscription liability to pay for stock in a corporation is of that character.

7. The facts as regards mere conditions precedent to the enforcement of a contract liability may be pleaded according to their legal effect by force of the statute on that subject, and other mere con-

South Milwaukee Co. v. Murphy, 112 Wis. 614.

ditions of fact not going to the foundation of a cause of action may
be so pleaded under the liberal rules of pleading established by the
Code, rendering the pleading good as against a challenge for insuf-
ficiency, though it may be open to a motion to make more definite
and certain.

8. The original subscription liability to pay for stock in a corporation
cannot be extinguished except by payment thereof or consent of the
corporation,

9. In an action to enforce a subscription liability for stock in a corpora-
tion, a claim that it has been extinguished, by the substitution of
an assignee of the stock as debtor of the corporation in place of the
original subscriber, is a matter of defense to be pleaded as such
and established by evidence.

10. Where by-laws of a corporation provide in general terms for notice
of calls, for payments upon subscription liabilities for stock, to
successors in interest of original subscribers therefor, it includes
notices to those who may have become possessed, as legatees or next
of kin of a deceased subscriber, of the benefits of a stock subscrip-
tion, where notice to them is necessary to a liability on their part
to pay such calls.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Milwaukee
county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

Action to recover the amount of an assessment upon a
subscription for capital stock. The complaint contained
the following statement of facts:

July 20, 1891, plaintiff was and ever since has been a cor-
poration duly organized as such under the laws of the state
of Wisconsin. Before it transacted any business, except
with its own members, more than fifty per cent. of its capi-
tal stock was subscribed for, and more than twenty per
cent. thereof was paid in cash into the treasury. One of
the subscribers for stock was Thomas Shea. The amount
of his subscription was 125 shares of the face value of $100
per share. By the terms of his subscription, in common
with all other subscribers, he agreed to pay $40 upon each
share of stock subscribed for by him as a down payment,
and to pay the balance as the same should be called for by
the corporation. July 20, 1891, Shea and all the subscribers

for stock paid $40 per share upon their subscriptions. May 21, 1892, a call for sixteen per cent. of the face of the stock was duly made by the plaintiff, which call was paid by all subscribers. July 9, 1894, Shea died testate in the city of Milwaukee. Thereafter such proceedings were taken that his estate was fully settled and the property left by him, after paying his debts and the costs of administering the estate, was distributed to the persons entitled thereto under the will, and the executor was discharged. The distributees were the defendants, *Kate Murphy, Andrew T. Shea, Edward Shea,* Alice Bulger, and Mary Cavanaugh. Each received one fifth of property exceeding in value $50,000.

After such distribution a call was duly made, pursuant to a resolution of the stockholders and board of directors of the plaintiff, and pursuant to its by-laws theretofore duly made and adopted, upon all the subscribers for stock, for fourteen per cent. of the face value of their subscriptions, payable upon the 1st day of November, 1898, and a call of ten per cent. of such face value payable on the 1st day of March, 1899. Plaintiff's by-laws duly provided the manner in which each subscriber and his successors in interest should be notified of such calls, and due notice thereof was given to each of the defendants pursuant thereto. Payment of the calls by the defendants, as to the Shea stock, was duly demanded before the commencement of this action, and payment was refused except as to $350.

Judgment was demanded for the balance of the calls as to the Shea stock, amounting to $2,650 and interest. Defendants *Kate Murphy, Andrew T. Shea,* and *Edward Shea* demurred to the complaint for insufficiency and for want of jurisdiction of the court over the subject of the action. The demurrer was overruled, and the demurrants appealed.

For the appellants there was a brief by *Miller, Noyes & Miller,* and oral argument by *George H. Noyes.* They contended,

*inter alia*, that plaintiff cannot sue at law; the remedy is in equity. 13 Ency. of Pl. & Pr. 11; *Fisher v. Fuller*, 122 Ind. 31; *Borer v. Chapman*, 119 U. S. 587, 600; *Public Works v. Columbia College*, 17 Wall. 521, 531; *Payson v. Hadduck*, 8 Biss. 293, 302; *Continental Nat. Bank v. Heilman*, 81 Fed. Rep. 36, 42; *Johnson v. Culbertson*, 79 Fed. Rep. 5. Secs. 3269 *et seq.* and secs. 3861 *et seq.* are but declaratory of the equitable doctrine, leaving the remedy as it was before their enactment. *Ernst v. Nau*, 63 Wis. 134, 138; 13 Ency. of Pl. & Pr. 14; *Continental Nat. Bank v. Heilman*, 81 Fed. Rep. 36, 43; *Johnson v. Culbertson*, 79 Fed. Rep. 5; *Hendricks v. Keesee*, 32 Ark. 714; *Williams v. Ewing*, 31 Ark. 229; 3 Pomeroy, Eq. Jur. 1154; *Hamblin v. Rohrbaugh*, 3 Kan. App. 131; *Blinn v. McDonald*, 92 Tex. 604; *Stroud's Heirs v. Barnett*, 3 Dana (Ky.), 392.    It has been held by this court that the action under secs. 3274 *et seq.* against heirs and devisees is equitable. *Adkins v. Loucks*, 107 Wis. 587; *Hauselt v. Patterson*, 124 N. Y. 349, 356; *Wood v. Wood*, 26 Barb. 356; *Mortimer v. Chambers*, 63 Hun, 335.  Personal property differs from real property in no respect which should make the remedy at law as to one and in equity as to the other.    Plaintiff's claim is barred. It was not a contingent claim. *Austin v. Saveland's Estate*, 77 Wis. 108; *Carpenter v. Murphey*, 57 Wis. 541; *Logan v. Dixon*, 73 Wis. 533; *Edwards v. Roepke*, 74 Wis. 571, 575; *Foster v. Singer*, 69 Wis. 392; *Stichter v. Cox*, 52 Neb. 532; *Sargent's Adm'r v. Kimball's Adm'r*, 37 Vt. 320; *Greene v. Dyer*, 32 Me. 460; *Ames v. Ames*, 128 Mass. 277.    The contract of subscription created a present debt in no wise resting in contingency. A call does not fix the liability, but only the time of its payment.    *Germania I. M. Co. v. King*, 94 Wis. 439; *Pittsburg & C. R. Co. v. Clarke*, 29 Pa. St. 146; *Grissell's Case*, L. R. 1 Ch. App. 528, 535; Cook, Stock, 105; *Hatch v. Dana*, 101 U. S. 205.  The complaint fails to allege a valid call.  It does not set out a copy or the substance of any by-law of the plaintiff providing for making a call upon

subscribers and the manner of giving notice thereof. *Germania I. M. Co. v. King*, 94 Wis. 439, 442; *Anvil M. Co. v. Sherman*, 74 Wis. 226, 233; *North Milwaukee T. S. Co. v. Bishop*, 103 Wis. 492; 1 Beach, Priv. Corp. § 325, p. 528; *Harker v. Mayor*, 17 Wend. 199.

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *T. W. Spence*.

MARSHALL, J.    The first proposition submitted for consideration by appellants' counsel is based on the assumption that the purpose of the pleader was to state a cause of action at law.    That assumption is doubtless in accordance with the fact.    The only relief demanded or demandable on the facts alleged is a recovery of money, hence the issues of fact, when formed, will be triable by a jury as a matter of right; and that makes the action one at law.    Sec. 2843, Stats. 1898.

But it is contended that the action is under sec. 3274, Stats. 1898, and that it authorizes only an equitable action. We are unable to see anything in the complaint indicating that respondent's counsel purposed stating a cause of action under that section.    It authorizes an action against heirs or devisees who shall have, as such, become possessed of real estate, and provides that the action must be brought against all such heirs or all such devisees as a class.    No judgment can be rendered unless the entire class is before the court. Sec. 3275.    The complaint must contain a description of the real estate received by each defendant, and a statement of the value thereof.    Sec. 3276.    Each defendant can be held liable only for such proportion of the plaintiff's claim as the value of the real estate received by him bears to that received by all the members of the class and not exceeding the value of what he received; and in case he shall not have sold such realty the judgment against him can be enforced against that particular property only.    Whether such an

action is one in equity need not be here decided; for, manifestly, the complaint does not state facts sufficient to satisfy such statutes.

Respondent's counsel say that its right to recover, if it has any, is under sec. 3269, Stats. 1898. Assuming that the claim is not barred by some statute of limitation, and was not and is not recoverable, as shown by the complaint, by proceedings in the county court or from personal representatives of the deceased, we are unable to see why the complaint does not meet all the calls of such section and those regulating the procedure thereunder. It provides:

"Actions against the next of kin or legatees of any deceased person to recover the value of any assets that may have been paid to them by any executor or administrator may be brought against all of the next of kin jointly or one or more of them, or against all of the legatees jointly or one or more of them."

The defendants are next of kin of the deceased, and his legatees as well, and they received assets of his estate from his executor exceeding in value the plaintiff's claim. Sec. 3270 provides:

"If such action be brought against the next of kin the plaintiff must show that he has been or will be unable, with due diligence, to collect his debt or some part thereof by proceeding in the proper county court or from the personal representatives of the deceased."

As the defendants are sued as legatees, that provision is not material. However, if plaintiff's claim, without fault on its part, was not in a condition to be enforced in the county court during the progress of the administration of the estate, the complaint would satisfy the quoted requisites of sec. 3270, if the action was against the defendants as next of kin. Sec. 3272 provides that if the action be against legatees there shall be no recovery unless it be shown that no assets were delivered by the executor or administrator to the next of kin of the deceased, or, if any such were so

delivered, that the value thereof has been recovered by other creditors, or is not sufficient to satisfy the plaintiff's demand, in which case the recovery shall be limited to the deficiency. Here, as indicated, the legatees received all the assets, so such section would be satisfied if they were not next of kin. Secs. 3270 and 3272 provide that the defendants, in proportion and to the extent of the assets received by them respectively, shall be liable for so much of the plaintiff's claim as all the members of their class might have been held liable for, each having a right of action against other members of such class for contribution when necessary to ratably distribute the entire burden, and that the judgment shall express the amount adjudged against each defendant for damages and costs, the same to be docketed and enforced against the defendants severally in like manner as if there were several judgments, that is, by separate executions and against the property of the judgment debtors as in ordinary cases.

It will be seen that such statutes contemplate an action for money only, one in which issues of fact, if formed, are triable by a jury as a matter of right, or, in other words, an action at law. The authorized action is not *in rem.* No lien is obtainable upon the specific property received by the defendants from the deceased. It is not to enforce a trust, for the defendants are not required to account for the property received by them *in specie* or for the proceeds thereof. It is to enforce a liability different from any existing at common law, a legal liability created by statute to pay the plaintiff's claim to the extent specified therein. The statute, acting upon the conditions and to the extent mentioned, creates a devolution of liability from the estate of the deceased to his next of kin and legatees without changing the nature of the claim. By the act of the next of kin or legatees, in taking assets from the administrator or executor, they do not become trustees thereof for the benefit of per-

sons who may be unable to collect their claims against the deceased by proceedings in the county court or from the personal representatives of the deceased, under the provisions of ch. 165, Stats. 1898; but they impliedly assume and agree to pay such claims to the extent of their statutory liability. Sec. 3269 creates a legal liability and none other, enforceable in an action at law and in no other way.

But counsel contend that the claim is barred by the statutes of nonclaim, so called; that the claim in question was not contingent, hence should have been presented to the probate court for allowance. All claims not proper to be allowed, but which may be exhibited to the county court and may ripen into absolute liabilities, are contingent, and a failure to present them while the contingent character exists does not affect the right of action under sec. 3269, Stats. 1898. *Ernst v. Nau*, 63 Wis. 134; *Mann v. Everts*, 64 Wis. 372. Many authorities are cited to our attention on the subject of what is a contingent claim. Expressions are gathered from them and referred to as showing that a liability upon a subscription for capital stock in a corporation is a debt, and that a debt *in præsenti* is not a contingent claim; that when we speak of a contingent claim in the language of the statute, the element of contingency refers to the existence of the debt, not to whether there is an absolute liability to pay it. For instance, in *Greene v. Dyer*, 32 Me. 460, this expression is used, speaking of contingent claims: "That class of claims embraces those only, concerning which it is uncertain or contingent whether they will ever become debts." Evidently the court meant, ever become absolute debts. The case, rightly understood, is in harmony with *Austin v. Saveland's Estate*, 77 Wis. 108, and other cases cited by appellant's counsel, decided in this court, and cases decided elsewhere, to the effect that, if a liability exists but it is uncertain whether it will ever be absolute in the sense of being enforceable, it is contingent

within the meaning of the statute.   The terms " debt," " ab-
solute debt," " liability," and " absolute liability," are used
in the authorities in a way to confuse and lead to wrong
deductions if one does not keep in mind that the essential
element of a contingent claim is uncertainty as to whether
it will ever be enforceable.   True, so long as a debt is ab-
solute it is not contingent, but it is not absolute if its
enforceability is dependent upon a contingency that may
never happen.   True, a subscription liability for capital
stock in a corporation is a debt, as said in 1 Cook, Stock,
§ 105, and in *Hatch v. Dana*, 101 U. S. 205, cited to our at-
tention, and in all authorities that treat of the subject, but
not an absolute debt.   It is a debt payable in the future, as
said by this court in *Germania I. M. Co. v. King*, 94 Wis.
439, but payable only in the future upon a contingency, the
happening of an event, to wit, a call regularly made pursu-
ant to the by-laws of the corporation and notice given pur-
suant thereto; hence a contingent claim.   The call does not
fix the liability in the sense of creating the obligation to pay
for the stock.   That is created by the subscription contract;
but the contract is not to pay for the stock at all events; it
is to pay upon a contingency, upon condition of a call being
made according to the contract.   The call makes what was
before contingent absolute.   It fixes the time of payment
only as a step in satisfying the contingency necessary to
make the liability absolute, to make what was before un-
certain whether it would ever occur, certain, satisfying the
rule announced in *Austin v. Saveland's Estate*, 77 Wis. 108,
which was but a statement of elementary law.   Probably
the rule cannot be found more tersely stated than by Justice
BRADLEY in *Riggin v. Magwire*, 15 Wall. 549, in speaking of
what constituted a contingent claim under the bankrupt act
of 1841.   This language was used:

" The better opinion is, that so long as it remains wholly
uncertain whether a contract or engagement will ever give
rise to an actual duty or liability, and there is no means of

removing the uncertainty by calculation, such contract or engagement is not provable."

It would seem from the foregoing, there being no controversy but that an absolute liability does not exist to pay upon a subscription for stock in a corporation, except upon a call regularly made and notice thereof regularly given to the subscriber pursuant to the by-laws of the corporation, that citations of authority, classing such claims as contingent, are not necessary. The general rule, that where absolute certainty does not exist there is the uncertainty necessary to the contingency mentioned in the statute, would seem sufficient. However, counsel for appellants were able to present one case where the precise question at issue, in circumstances similar to those present here, was decided. *Lake Phalen L. & I. Co. v. Lindeke*, 66 Minn. 209. They also cite *Dent v. Matteson*, 70 Minn. 519, where the same question was decided under different circumstances, it being there held, in accordance with a familiar rule, that the insolvency of the corporation created an absolute necessity to call in balances due on subscriptions to capital stock, removing the element of contingency the same as a call under ordinary circumstances. We may say in passing that both actions were under a statute precisely the same as our sec. 3269, and were commenced and prosecuted as actions at law. The cases are numerous where the same question has been decided under other circumstances. We cite the following: *Glenn v. Howard*, 65 Md. 40; *South Staffordshire R. Co. v. Burnside*, 5 Exch. 129; *General Discount Co. v. Stokes*, 17 C. B. (N. S.), 765; *In re General Estates Co.* 4 Ch. App. 274; *Martin's P. A. Co. v. Morton*, L. R. 3 Q. B. 306; Black, Bankruptcy, 221. The following quotations from the decisions will amply show the position of the courts on the subject under discussion. In *South Staffordshire R. Co. v. Burnside*, PARKE, B., speaking for the court, said:

"The contract on which the shareholder's obligation is founded is not to pay a certain fixed sum upon a future

contingency, but such sum or sums as may be required from himself and all the other shareholders from time to time, not exceeding a certain sum, and regulated by the wants of the company. At the time of the bankruptcy it was uncertain what the sum would be which the defendant would be called on to pay, and no certain debt was then contracted."

In *Glenn v. Howard,* this language was used:

" As against the company and those claiming to hold under it, the stockholder has a right to stand upon the terms of his contract, and that contract created no obligation upon him to pay, except upon a general call legally made upon all the stockholders; and in the absence of such call no one could foretell, or have the means of ascertaining, what amount, or when, the stockholder would be required to pay on his stock, or whether he would ever be required to pay at all."

The conclusion of the court was that, at the time the discharge in bankruptcy took effect, the liability of the defendant for the unpaid subscriptions for stock was a contingent claim, hence not provable under the bankrupt act, and that therefore the enforcement of future calls upon subscription liability was not barred by the discharge in bankruptcy. The test adopted as to what constitutes a contingent claim, was the rule laid down in *Riggin v. Magwire,* 15 Wall. 549.

It is considered that, upon reason and authority, the claim in question was contingent till after the administration of the estate of Shea was completed.    There was no way whereby, in advance of a call regularly made, the liability upon the subscription contract could have been valued and extinguished by payment, or of determining whether any payment whatever would ever be required, hence it was not a claim that could have been allowed by the probate court, and was not affected by the bar of the statute as to allowable claims.    Sec. 3844, Stats. 1898.

It is further contended that the complaint failed to allege a valid call for a payment upon the subscription contract in that, instead of setting forth the particulars in regard to the

existence of the by-laws and compliance therewith, such particulars were pleaded according to their legal effect, thus: " A call was duly made pursuant to resolutions," etc., "and in pursuance of the by-laws of said company theretofore duly made and adopted." " The by-laws of said plaintiff duly provided the manner in which each subscriber, and his representatives and successors in interest, should be notified of said calls, and due notice," etc., " pursuant to said by-laws, was given to each of the defendants," etc., and " due demand made for the payment thereof." To support the proposition that such allegations were insufficient, authorities are cited to the effect that where a liability arises under a by-law, the by-law must be specially pleaded; that is, where the liability, not a mere condition precedent to the enforcement of the liability, depends upon a by-law, it must be pleaded. Manifestly such authorities have no application to the liability in question. The foundation of the liability was the subscription contract. The existence of by-laws and the making of the call and giving notice pursuant thereto were mere conditions precedent to a complete cause of action upon such contract, and therefore the facts in that regard were pleadable according to their legal effect by express provision of statute. Sec. 2674, Stats. 1898. Moreover, independent thereof, under the liberal rules of pleading prescribed by the Code, facts which are inferable with reasonable certainty when stated according to their legal effect, if so alleged, do not render the pleading bad upon a challenge for insufficiency, though it may be open to a motion to make more definite and certain. That has often been decided by this court. *Cutler v. Ainsworth,* 21 Wis. 381; *Frankfort Bank v. Countryman,* 11 Wis. 398. That rule was recently applied to a situation very much like the one before us. *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421. The authorities in the state of New York, from which our system of pleading was adopted, are to the same effect. *Gay v. Paine,* 5

How. Pr. 107; *Ketelias v. Myers*, 19 N. Y. 231; *Platt v. Stout*, 14 Abb. Pr. 178; *People ex rel. Crane v. Ryder*, 12 N. Y. 433; *People ex rel. Hawes v. Walker*, 23 Barb. 304.   In the latter case it was said that the allegation that a meeting was duly convened implies that it was regularly convened, and, if necessary to its regularity, that it was an adjourned meeting.  In *Platt v. Stout* it was held that, impliedly, a person's title to office is sufficiently pleaded on demurrer, by an allegation that on a day specified, in pursuance to the laws of the state, such person was duly appointed to fill the office, and duly made and executed his official bond with sureties, and took the oath of office required by law.

It is further suggested that the complaint is bad because it does not affirmatively show that the original subscription liability has not been extinguished by a transfer of the stock and an acceptance of the transferee in place of the original subscriber.  It is considered that we ought not to dignify that proposition by any extensive discussion of it.  The original liability could not have been extinguished except by consent of the corporation, and if there has been such an extinguishment it is a matter of defense to be raised by answer like a plea of judgment, or any other matter showing that the original liability created by the subscription contract no longer exists.

The further point is made that the complaint does not show that the by-laws contained any provision for giving notice of calls to the heirs of deceased stockholders.  The conclusive answer to that seems to be that the complaint states that the by-laws provide the manner of giving notice to successors in interest of a stockholder, and that the entire beneficial interest in the stock in question, either *in specie* or the proceeds thereof, went to the defendants, and that due notice of the calls in question was given to them.  The term " successors in interest " does not necessarily mean successors in ownership of the stock.  It is broad enough and

was doubtless intended to cover successors to the benefits of such ownership. The complaint amply shows that the stock, either *in specie* or otherwise, swelled the assets of the deceased, to which the defendants succeeded as legatees.

The foregoing covers all the grounds upon which the complaint is challenged. None of them appears to be tenable.

*By the Court.*— The order appealed from is affirmed.